UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRANDON S. K.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

Defendant.

CASE NO. 3:25-CV-6033-DWC

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of Defendant's denial of his applications for supplemental security income ("SSI") and disability insurance benefits ("DIB").[1] The Court concludes that the Administrative Law Judge ("ALJ") did not err in determining that Plaintiff was not disabled at Step Three of the Social Security sequential process, nor in considering Plaintiff's subjective symptom testimony. Accordingly, the decision of the Commissioner of the Social Security Administration ("Commissioner") is affirmed.

---

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkts. 2, 3.

ORDER AFFIRMING DEFENDANT'S DECISION
TO DENY BENEFITS - 1

## I. Procedural History

Plaintiff filed his applications for SSI and DIB on March 29, 2022, alleging disability as of August 16, 2012. Dkt. 8, Administrative Record ("AR") 182, 195. His claims were denied initially on February 9, 2023, and upon reconsideration on August 25, 2023. AR 182, 195, 240, 244. A hearing was held before ALJ David Johnson ("the ALJ") on September 24, 2024, who issued a decision denying Plaintiff's claim on November 25, 2024. AR 51–69. The Appeals Council denied Plaintiff's request for review on September 30, 2025, making the ALJ's decision the Commissioner's final decision subject to judicial review. AR 1. From this decision, Plaintiff filed a complaint with this Court on November 20, 2025, seeking judicial review of the ALJ's decision denying benefits. Dkt. 5.

## II. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). "We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [they] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

"[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). Generally, an error is harmless if it is not prejudicial to the claimant and is "inconsequential to

ORDER AFFIRMING DEFENDANT'S DECISION
TO DENY BENEFITS - 2

the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115.

**III.    Discussion**

In his Opening Brief, Plaintiff argues that the ALJ erred in (1) failing to find Plaintiff disabled at Step Three pursuant to Listing 12.04, and (2) in considering Plaintiff's subjective symptom testimony. Dkt. 12 at 1.

A.    Step Three Determination

Plaintiff argues that the ALJ erred in concluding that Plaintiff was not disabled at Step Three of the Social Security sequential process pursuant to Listing 12.04. Dkt. 12 at 4.

At Step Three of the sequential evaluation process, the ALJ considers whether one or more of the claimant's impairments meets or equals an impairment listed in Appendix 1 to Subpart P of the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Each Listing sets forth the "symptoms, signs and laboratory findings" that must be established for an impairment to meet the Listing. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999) (citation omitted). "If a claimant meets or equals a listed impairment [they] will be found disabled at this step without further inquiry." *Id.*; *see also* 20 C.F.R. §§ 404.1520(d), 416.920(d).

A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." Social Security Ruling ("SSR") 96-4p, 1996 WL 374187, at *1. The impairment must be established by medical evidence "consisting of signs, symptoms, and laboratory findings[.]" *Id.* An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248, at *2.

ORDER AFFIRMING DEFENDANT'S DECISION
TO DENY BENEFITS - 3

"Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)). The burden of proof is on the claimant to establish that they meet or equal any of the impairments in the Listings at Step Three. *See Tackett*, 180 F.3d at 1098 ("The burden of proof is on the claimant as to [S]teps one to four."). "A generalized assertion of functional problems[,]" however, "is not enough to establish disability at [S]tep [T]hree." *Id.* at 1100 (citing 20 C.F.R. § 404.1526).

Listing 12.04 governs "[d]epressive, bipolar and related disorders[,]" and contains "three paragraphs, designated A, B, and C." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(a)(2). To meet Listing 12.04, a claimant's mental disorder must satisfy the requirements of paragraph A and either paragraph B or C. *Id.*[2] Paragraph A requires medical documentation of certain symptoms. *Id.* at 12.04(A). Paragraph B requires "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning[,]" including: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself ("paragraph B criteria"). *Id.* at 12.04(B). A "marked limitation" exists when a claimant's ability to function "independently, appropriately, effectively, and on a sustained basis" in a specific area of functioning "is seriously limited." *Id.* at 12.00(F)(2)(d). An extreme limitation exists in a functional area when the claimant is "not able to function in this area independently, appropriately, effectively, and on a sustained basis." *Id.* at 12.00(F)(2)(e).

---

[2] Plaintiff makes no argument that he satisfied the paragraph C criteria of Listing 12.04, which requires a mental disorder be "serious and persistent." *See generally* Dkt. 12 at 4–8; 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.04(C).

ORDER AFFIRMING DEFENDANT'S DECISION
TO DENY BENEFITS - 4

In support of his argument that the ALJ erred in finding Plaintiff not disabled at Step Three under Listing 12.04, Plaintiff relies extensively upon the medical opinion of Nurse Practitioner Kathleen Dee ("NP Dee"). Dkt. 12 at 4–7. Plaintiff argues that the "ALJ did not provide legally sufficient reasons to not adopt [NP] Dee's extreme judgment findings and extreme inability to manage himself on the PRTF rating, with a doable suicid[e] plan (drowning), and factors, like sleep disturbance and anhedonia, which together met [L]isting 12.04 (A) and (B)." *Id.* at 1.

As an initial matter, an "extreme judgment" finding is not one of the enumerated paragraph B criteria under Listing 12.04. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.04(B). Even assuming, *arguendo*, that Plaintiff had an "extreme" limitation in his judgment, this would not be a basis for finding disability pursuant to Listing 12.04 paragraph B; therefore, the Court will limit its analysis to the fourth paragraph B criteria in Listing 12.04, Plaintiff's ability to "adapt/manage [him]self." *Id.*

NP Dee conducted a "mental evaluation" of Plaintiff on January 12, 2023. AR 871. Pertinent to this analysis, NP Dee opined that Plaintiff's "judgment and insight showed extreme limitations when asked how they would respond to smoke in a crowded theater" and she also noted "recurrent suicidal ideations with a plan; [Plaintiff] report[ed] no desire to continue living, [Plaintiff] verbaliz[ed] a specific suicide plan with a means to carry it out –'drowning myself.'" AR 873.

Later in the evaluation, however, NP Dee opined that Plaintiff "was able to understand instructions, was able to remember and apply information," was able to "sustain concentration and show persistence for up to an hour or more" and was "able to do these activities on his own and at his own pace." AR 874. NP Dee noted that Plaintiff had "limited social interactions," but

ORDER AFFIRMING DEFENDANT'S DECISION
TO DENY BENEFITS - 5

"ha[d] a history of interacting well with coworkers and supervisors [despite] at times reporting having a problem with people who are narcissistic." AR 875–76. Critically, NP Dee *did not* offer an opinion regarding Plaintiff's ability to "adapt or manage" himself, the fourth paragraph B criteria under Listing 12.04. AR 871–76.

The ALJ found that Plaintiff's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria of Listing[ ] 12.04[.]" AR 55. As to the fourth paragraph B criteria, the ALJ found that Plaintiff had a "mild" limitation in adapting or managing himself, observing that Plaintiff underwent a consultative examination and

> presented as polite, cooperative, and well-groomed with good eye contact, casual appropriate dress, and good hygiene. There was no evidence of psychomotor agitation or retardation. He was fully oriented but exhibited poor insight/judgment. Accordingly, [Plaintiff] is no more than mildly limited in adapting or managing oneself.

AR 56.

In his Opening Brief, Plaintiff acknowledges that "[m]ost mental status findings were normal" but contends "the interview [with NP Dee] revealed abnormalities[,]" Dkt. 12 at 1, including "[s]uicidal ideation with a specific plan within the ability of the patient (drowning), [which] earmarks extreme limitations in insight and judgment, and self management" pursuant to the American Psychiatric Association Practice Guidelines. *Id.* at 6. Although Plaintiff contends that these observations, in tandem, constitute an "extreme" limitation, as noted above, NP Dee, herself, *did not* opine "extreme" limitations in Plaintiff's ability to "adapt/manage [him]self" in her mental evaluation of Plaintiff. AR 871–76.

Plaintiff is correct to note, however, that most mental status findings in the record were "normal," Dkt. 12. at 1, as mental health records repeatedly demonstrate Plaintiff having "good" insight and judgment, AR 929, "neat" appearance with "awake/alert, cooperative, normal"

ORDER AFFIRMING DEFENDANT'S DECISION
TO DENY BENEFITS - 6

behavior/activity, congruent mood and affect, and normal speech. AR 935, 937, 939, 941, 943, 945, 947. Indeed, when considering NP Dee's opinion, the ALJ found "NP Dee opined few to no limitations, which is consistent with and supported by the generally normal mental health status examinations." AR 66.

Again, at Step Three of the Social Security sequential process, the burden of proof is on Plaintiff to establish that he meets or equals any of the listed impairments, and "[l]isted impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy*, 738 F.3d at 1176 (citation omitted). Aside from the evidence in NP Dee's mental evaluation that Plaintiff contends rises to the level of an extreme limitation, Plaintiff does not identify any evidence in the record where Plaintiff was opined to have an "extreme" limitation in his ability to adapt or manage himself. *See* Dkt. 12 at 4–8.

Although Plaintiff interprets the evidence in NP Dee's medical opinion differently than the ALJ, arguing that NP Dee's findings, collectively, indicate an "extreme" limitation in Plaintiff's ability to adapt or manage himself, the ALJ considered the opinion of NP Dee— including observed suicidal ideation, poor insight and judgment, inability to manage funds, and isolating behavior—and nonetheless found that Plaintiff had a "mild limitation" in this area of mental functioning. AR 56, 66.

It is well-established that "the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Accordingly, "[e]ven if the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022)

ORDER AFFIRMING DEFENDANT'S DECISION
TO DENY BENEFITS - 7

(citation and internal quotation marks omitted); *see also Ashby v. Berryhill*, No. 2:17-CV-01576-DWC, 2018 WL 1725541, at *4 (W.D. Wash. Apr. 10, 2018) (observing no error where the plaintiff did not "point[ ] to evidence showing his combined impairments equal a listed impairment"). For this reason, the Court concludes that the ALJ did not err in declining to find Plaintiff disabled at Step Three, pursuant to Listing 12.04.

B.       Subjective Symptom Testimony

Next, Plaintiff argues that the ALJ did not provide sufficient reasons for rejecting Plaintiff's subjective symptom testimony. Dkt. 12 at 8.

"An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) (citation omitted). The first step requires an ALJ to determine "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (citation omitted). This objective medical evidence does not have to corroborate the severity of the alleged symptoms; rather, "the medical evidence need only establish that the impairment could reasonably be expected to cause some degree of the alleged symptoms." *Id.*

If a claimant has satisfied the first step, and there is no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1112 (citation omitted). The specific, clear, and convincing standard is "the most demanding [standard] required in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). "The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499

ORDER AFFIRMING DEFENDANT'S DECISION
TO DENY BENEFITS - 8

(9th Cir. 2022). As with all findings by the ALJ, however, the specific, clear, and convincing reasons for rejecting the claimant's testimony about the severity of their symptoms must also be supported by substantial evidence in the record. 42 U.S.C. § 405(g); *see also Bayliss*, 427 F.3d at 1214 n.1.

At the hearing in September 2024, Plaintiff testified that he had "chronic pain that hurts really bad, I mean to the degree where I can't walk or I'm getting headaches and, you know, my fingers hurt and I can't even grip anything[.]" AR 168. When asked how often he had headaches, Plaintiff responded, "I get them constantly. All day long . . . [e]very day, yeah," and as to their severity, testified that the headaches were "about as bad as it can be just every day." AR 169–70. Plaintiff testified that his condition worsened after a hiking incident "over the last, like, two years, I think it was two years ago, no, 2021 I think was about the timeframe." AR 160. Shortly thereafter, Plaintiff testified "I was thinking that it was in 2022 last . . . so, like, it might have been 2022 . . . I remember it was in April, and I'm just struggling with the year right now." *Id.*

Plaintiff went on to testify about his headaches and their impact, stating that headaches gave him "a hard time sleeping . . . I wake up every night at, like, 3 a.m.; I have to get up because I get - - my headache gets really bad and if I don't get up then it just keeps getting worse and worse" and that he "just ha[d] a problem with sleep every day, and then anytime I carry anything more than about 10-20 pounds I get headaches from that too, so taking out the garbage or carrying groceries in is something that I can't do." AR 157–58.

As to the April 2021 or 2022 hiking incident, Plaintiff testified that he

> came home from walking around on a hike with my aunt one day, and my neck was hurting and it just - - I got a headache that turned into - - I was - - I don't know how to explain it, but I just started moaning, and then I started crying and drooling all over myself, and for, like, an hour and a half or two hours, and I get those headaches when I carry things that are too heavy now, so that's what happened with my aunt

ORDER AFFIRMING DEFENDANT'S DECISION
TO DENY BENEFITS - 9

from that point here to two years ago I get those headaches that make me - - they make me go into that place where I feel like a zombie.

AR 161.

The ALJ found that Plaintiff suffered several severe impairments, including occipital neuralgia, osteoarthritis, radiculopathy, stenosis, obesity, post-laminectomy syndrome, headaches, history of right knee arthroplasty, major depressive disorder, and anxiety disorder. AR 54. While the ALJ found that these impairments could reasonably be expected to cause some degree of the alleged symptoms, the ALJ nonetheless determined that Plaintiff's "treatment record [wa]s inconsistent with [his] testimony[,]" and claims of "debilitated functioning [we]re inconsistent with contemporaneous reports of actual functioning." AR 58. It is well-established that this is a proper basis for discounting a claimant's testimony. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citation omitted) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

With respect to Plaintiff's headaches, the ALJ found that on April 7, 2021, Plaintiff sought medical care for the first time since 2018, and at that appointment, reported knee pain, a history of three right-knee replacement surgeries, neck pain, three surgeries on his lumbar spine, and difficulty speaking at times. AR 60. Indeed, on April 7, 2021, Plaintiff sought care for "knee pain" and acknowledged his prior history of chronic migraines, AR 703, but notably "denie[d] headache(s)" *three times* at that appointment and claimed that his past migraines were "[r]esolved with neck and shoulder stretches." AR 704–05.

The ALJ found that this evidence was "inconsistent with his testimony of getting headaches constantly, all day long, every day. Subsequently, Plaintiff sought treatment for his knee in May and June 2021, but there is no mention to medical service providers of a worsening headache condition around April 2021." AR 60. As the ALJ observed, there is no notation by

ORDER AFFIRMING DEFENDANT'S DECISION
TO DENY BENEFITS - 10

medical service providers of a worsening headache condition around April 2021 at Plaintiff's appointments in May and June 2021; in fact, Plaintiff asserted that he had "no headaches" at these appointments. AR 60, 678, 1305.

When considering Plaintiff's testimony that his worsening headache-related condition *actually* occurred following the hike in April 2022 (not April 2021, as Plaintiff initially testified), the ALJ found that these claims were also "inconsistent with the medical records in both April 2021 as well as April 2022 which show no mention of a hike." AR 60. The ALJ pointed to medical records from September 2022—unquestionably *after* Plaintiff testified that his condition worsened—and noted that Plaintiff "did not report a headache like the one he testified to experiencing when he said his condition significantly worsened." *Id.* This observation by the ALJ was supported by substantial evidence because at the September 14, 2022, appointment, Plaintiff reported "neck pain and arm pain" but "no headache." AR 785.

Finally, the ALJ found that, in June 2024, *years* after Plaintiff alleged his headache condition worsened, Plaintiff "reported to his primary care provider that he is not experiencing headaches, [which was] inconsistent with his testimony of constant headaches." AR 64, 1057. This finding by the ALJ is supported by substantial evidence, as medical records from June 2024, a mere three months before Plaintiff's hearing, show that Plaintiff reported that "[h]e does not get *any* headaches and he is able to sleep better." AR 1057 (emphasis added).

In sum, the ALJ reasonably concluded that the medical evidence was inconsistent with Plaintiff's allegations of disabling headaches that occurred "constantly. All day long . . . [e]very day[.]" AR 169. The ALJ's findings were based upon specific, clear, and convincing reasons, that, in turn, were supported by substantial evidence in the record. Thus, the Court concludes that

ORDER AFFIRMING DEFENDANT'S DECISION
TO DENY BENEFITS - 11

the ALJ did not err in rejecting Plaintiff's subjective symptom testimony pursuant to inconsistencies with the medical record.

Because one ground, supported by substantial evidence, for discrediting a claimant's subjective symptom testimony is sufficient, the Court need not address Plaintiff's remaining arguments regarding his subjective symptom testimony, as any error by the ALJ would be harmless. *See Carmickle*, 533 F.3d at 1162 (concluding that where the ALJ provides reasons for discounting subjective symptom supported by "substantial evidence" any subsequent error in evaluating subjective symptom testimony "is deemed harmless and does not warrant reversal").

**IV.    Conclusion**

Based on the foregoing reasons and the relevant record, the Court **ORDERS** that this matter be affirmed.

Dated this 28th day of April, 2026.

David W. Christel
United States Magistrate Judge

ORDER AFFIRMING DEFENDANT'S DECISION
TO DENY BENEFITS - 12